United States District Court
Southern District of Texas

**ENTERED**

March 21, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISABEL ALAMA APAMIBOLA, | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE | § | |
| ESTATE OF WILLIAM COFFY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2566 |
| | § | |
| CITY OF HOUSTON, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant City of Houston's ("City") Motion to Dismiss for Failure to State a Claim Under Federal Rule of Civil Procedure ("Rule") 12(b)(6) (Doc. 10), Plaintiff's Motion for Leave to Amend Original Petition (Doc. 14), and Plaintiff's Motion to Remand (Doc. 15). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant City's motion to dismiss be **DENIED AS MOOT**, Plaintiff's motion for leave to amend be **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's motion to remand be **DENIED**.

### I. Case Background

Plaintiff filed this tort action in her individual capacity ("Plaintiff Apamibola") and as representative of the estate of

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 16.

William Coffy ("Plaintiff Estate")(collectively "Plaintiff").[2] Plaintiff Apamibola was the wife of William Coffy ("Coffy").[3]

On August 5, 2014, Coffy was working at George Bush Intercontinental Airport cleaning debris from the inter-terminal rail tracks when he "was hit or almost hit" by an Automatic People Mover.[4] Coffy was not using any fall-protection equipment and fell off the tracks more than fifty feet to the ground.[5] He was seriously injured and ultimately died from his injuries.[6]

In July 2015, Plaintiff filed this action in state court against Bombardier Transportation System, Bombardier, Inc., Defendant City, and Defendant United Airlines, Inc., ("UA").[7] Plaintiff alleged negligence (premises liability), negligence per se, and gross negligence under survivorship and wrongful-death rights of action.[8] Plaintiff requested that the court issue a temporary restraining order requiring a joint inspection of the site and the return of Coffy's personal property.[9] Plaintiff also

---

[2]    See Doc. 1-3, Ex. C-1 to Notice of Removal, Pls.' Original Pet.

[3]    See id. ¶ 6.5.

[4]    Id. ¶ 5.1.

[5]    See id.

[6]    Id.

[7]    See Doc. 1-3, Ex. C-1 to Notice of Removal, Pls.' Original Pet.

[8]    See id. ¶¶ 6.1-6.14.  Plaintiff asserted that Coffy had no debts at the time of his death, and no administration of his estate was pending or necessary. Id. ¶ 6.9.

[9]    See id. ¶ 7.1-7.5.

sought damages for pecuniary losses, psychological treatment, funeral expenses, mental anguish, loss of companionship and society, medical expenses, Coffy's pain, suffering, and mental anguish, as well as pre-judgment interest, post-judgment interest, costs, and exemplary damages.[10]

In August 2015, the parties agreed that Plaintiff would nonsuit Bombardier Transportation System and Bombardier, Inc., because they are not proper parties to the suit and that Bombardier Transportation (Holdings) USA, Inc., ("Bombardier"), the proper party, would file an answer.[11]  Defendant Bombardier, filed an answer on September 1, 2015.[12]  Plaintiff did not file a notice of nonsuit.

Defendant UA removed this action on September 4, 2015.[13]  As the basis for removal jurisdiction, Defendant UA asserted diversity of citizenship.[14]  The argument offered in support was that Defendant UA, a citizen of Delaware and Illinois, and Defendant Bombardier, a citizen of Delaware and Pennsylvania, were the only properly joined defendants and were diverse from both Plaintiff

_____

[10]   See id. ¶¶ 8.1-9.2.

[11]   See Doc. 1-6, Ex. F to Notice of Removal, Letter from Edward B. Adams, Jr., to Sean A. Roberts Dated Aug. 27, 2015.  Plaintiff later acknowledged that the wrong parties had been named, asserting this fact as a reason for the court to allow amendment.  See Doc. 15, Pl.'s Mot. to Remand p. 5 n.2.

[12]   See Doc. 1-3, Ex. C-7 to Notice of Removal, Def. Bombardier's Original Answer.

[13]   See Doc. 1, Notice of Removal.

[14]   See id. pp. 5-11.

Apamibola, a citizen of Ghana, and Plaintiff Estate, presumed by the parties to be a citizen of Texas.[15]  Thus, Defendant UA argued, Defendant City's citizenship should be disregarded because it was fraudulently joined.[16]

On September 25, 2015, Defendant City filed the pending motion to dismiss.[17]  Plaintiff did not file a response to Defendant City's motion.  On November 13, 2015, Plaintiff filed the pending motion for leave to amend and the pending motion to remand.[18]  A few days later, the case was referred to the undersigned.[19]  On January 28, 2016, the court granted Defendant Bombardier's motion to compel Plaintiff to respond to discovery requests and entered a docket control order.[20]

The court begins with the motion to remand as it raises the issue of subject matter jurisdiction.  Finding that remand of the removed petition should be denied and, consequently, Defendant City should be dismissed, the court then considers whether Plaintiff

---

[15]    See id. pp. 1, 5-6.  Plaintiff pled that she "represents the Estate of William Coffy under the laws of the [S]tate of Texas."  Doc. 1-3, Ex. C-1 to Notice of Removal, Pls.' Original Pet. ¶ 3.1.  Defendant UA noted in its Notice of Removal that the estate "is believed to be considered a citizen of Texas." Doc. 1, Notice of Removal p. 5.

[16]    See Doc. 1, Notice of Removal pp. 6-11.

[17]    See Doc. 10, Def. City's Mot. to Dismiss for Failure to State a Cl. Under R. 12(b)(6).

[18]    See Doc. 14, Pl.'s Mot. for Leave to Am. Original Pet.; Doc. 15, Pl.'s Mot. to Remand.

[19]    See Doc. 16, Order Dated Nov. 18, 2015.

[20]    See Doc. 33, Oral Order Dated Jan. 28, 2016; Doc. 34, Docket Control Order.

4

should be allowed to amend the pleading.

## II.  Motion to Remand

The jurisdictional statutes allow removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  A defendant may remove a case in which the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.  See 28 U.S.C. §§ 1332; 1441.  Complete diversity refers to the requirement that the citizenship of each of the plaintiffs must be different from that of each of the defendants.  Stafford v. Mobil Oil Corp., 945 F.2d 803, 804 (5th Cir. 1991).

The doctrine of improper joinder is "a narrow exception to the rule of complete diversity."  Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)(quoting McDonal v. Abbott Labs., 408 F.3d 177, 183 (5th Cir. 2005)).  To establish that a non-diverse defendant has been improperly joined, the removing party must demonstrate either: (1) actual fraud regarding jurisdictional facts; or (2) the plaintiff's inability to establish a cause of action against the non-diverse defendant.  Id. (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)).

Absent a showing of actual fraud pursuant to the first option, the court must determine, under the second option, whether the defendant has met the heavy burden of demonstrating "that there is

5

no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. (quoting Smallwood, 385 F.3d at 573).  If the court finds no reasonable basis to predict that the plaintiff might be able to recover, the conclusion is that the plaintiff's joinder of the non-diverse party was indeed improper.  Id.

In conducting this analysis, the court reviews the petition on file at the time of removal and evaluates it from a fair-notice pleading standard.  See Akerblom v. Ezra Holdings, Ltd., 509 F. App'x 340, 344-45 (5th Cir. 2013)(unpublished); Presley v. Am. 1st Ins. Co., Civil Action No. H-10-4429, 2011 WL 486231, at *1 (S.D. Tex. Feb. 7, 2011)(citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)).  All factual allegations in the state court petition are considered in the light most favorable to the plaintiff, and contested issues of fact and any ambiguities of state law must be resolved in favor of remand.  See Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281 (5th Cir. 2007); Guillory v. PPG Indus., Inc., 434 F.3d 303, 308 (5th Cir. 2005).

By statute, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."  28 U.S.C. § 1332(c)(2).  The parties implicitly agree that the decedent was a citizen of Texas and do not dispute

that Defendant City is also a citizen of Texas.  Therefore, unless Defendant City was improperly joined, complete diversity is absent, and the case should be remanded.

Defendants UA and Bombardier filed responses to Plaintiff's motion to remand, offering multiple arguments for finding that Defendant City was improperly joined.[21]  One of those arguments is that the failure of Plaintiff to provide Defendant City with notice of her claims against it within the statutorily required time frame precludes the possibility that she may recover against Defendant City.  Because the court agrees with that argument and finds it dispositive of the motion to remand, the court does not address the other arguments.

The Texas Tort Claims Act requires that a plaintiff notify the governmental entity of the claims against it not later than six months after the date of the underlying incident.  See Tex. Civ. Prac. & Rem. Code § 101.101(a).  "The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident."  Tex. Civ. Prac. & Rem. Code § 101.101(a).  The statute also explicitly ratifies and approves a city's requirement of notice within a period stated within the city's charter.  Tex. Civ. Prac. & Rem. Code §

---

[21]    See Doc. 20, Def. UA's Resp. to Pl.'s Mot. to Remand pp. 9-17; Doc. 22, Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Compl. & Resp. to Pl.'s Mot. to Remand pp. 7, 10-16.  Defendant City joined Defendants UA and Bombardier's responses.  See Doc. 23, Def. City's Notice to Join Co-Defs.' Resps. to Pl.'s Mot. to Am. & Mot. to Remand.

101.101(b).

Defendant City's charter requires that the mayor and city council be given notice in writing of an injury within ninety days of the date on which it was sustained. See Hous., Tex., Charter, art. IX, § 11. Notice in adherence with a city's charter is mandatory, and "the timely filing of a written notice of claim is considered a condition precedent to maintenance of a suit against a city for injuries." Moreno v. City of El Paso, 71 S.W.3d 898, 901 (Tex. App.—El Paso 2002, pet. denied)(citing Smith v. City of Hous., 960 S.W.2d 326, 328 (Tex. App.—Houston [14th Dist.] 1997, no pet.)); see also Mayo v. Pasadena Police Dep't, Civil Action No. H-12-3123, 2016 WL 1002091, at *4 (S.D. Tex. Apr. 8, 2013).

These notice requirements "do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." Tex. Civ. Prac. & Rem. Code § 101.101(c). "[A]ctual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).

Here, Plaintiff's petition did not state that written notice was made to Defendant City. Additionally, although Plaintiff's petition attributed actual knowledge of the alleged premises defect

to Defendant City, it did not attribute actual notice of Plaintiff's claim to Defendant City. Neither the motion to remand nor the motion for leave to amend addresses notice of the claim at all. Plaintiff does not claim to have provided Defendant City written notice at all (much less in the time period set in Defendant City's ordinance).[22]

In Plaintiff's reply, Plaintiff asserts that Defendant City failed to "allege[] []or provide[] any evidence that it did not receive the statutory ninety (90) day notice."[23] Plaintiff contends that Defendant City was not only aware of the premises defect but that it cannot "truthfully argue that it did not have notice of its potential liability for Mr. Coffy's death considering its own investigation into his death and its actual knowledge of the OSHA [U.S. Department of Labor Occupational Safety and Health Administration] investigation and findings, including violations, against its contractor Bombardier."[24] This is the entirety of Plaintiff's argument in favor of actual notice.

Plaintiff submitted a redacted copy of the ninety-four-page OSHA file on the incident and a copy of the forty-four-page Houston

---

[22]    Although Plaintiff does not make the argument that the original petition served as written notice, the court notes that the original petition was eleven months after Coffy's fall, making it untimely as notice.

[23]    Doc. 24, Pl.'s Reply to Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Original Pet. pp. 4-5.

[24]    Id. p. 5.

Police Department ("HPD") investigation report on the incident.[25] Although Plaintiff did not point to any part of either as evidence of actual notice to Defendant City, the court looked through both exhibits for any indication that Defendant City had actual notice of Plaintiff's claim.

On perusal of the OSHA file, the court found no indication that the report was directed to Defendant City. In fact, the investigation involved only Defendant Bombardier as employer, and all documented communications were between representatives of OSHA and representatives of Defendant Bombardier. The court found no mention of Defendant City, and Plaintiff pointed to none.

The HPD report indicated that an HPD airport-division officer was summoned to the scene of Coffy's fall.[26] The officer requested an ambulance and, after Coffy was pronounced dead, contacted the HPD homicide division.[27] Various report forms in the HPD file refer to the incident as "an industrial accident."[28] The autopsy report showed the manner of death as an accident due to multiple blunt

---

[25]   See Doc. 24-1, Ex. 1 to Pl.'s Reply to Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Original Pet., OSHA File; Doc. 24-2, Ex. 2 to Pl.'s Reply to Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Original Pet., HPD Report.

[26]   See Doc. 24-2, Ex. 2 to Pl.'s Reply to Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Original Pet., HPD Initial Report p. 2.

[27]   See id.

[28]   See, e.g., Doc. 24-2, Ex. 2 to Pl.'s Reply to Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Original Pet., Crime Scene Unit Report Dated Aug. 26, 2014.

force injuries.[29]  The report noted that the "system [was] owned and operated by the City of Houston."[30]  Other than that reference, the court found no other specific reference to Defendant City. Moreover, the court found no indication that the mayor and city council were notified of the death and any potential claim of liability, and Plaintiff pointed to nothing to that effect.

Neither OSHA nor HPD's investigation and documentation specifically gave Defendant City actual notice of Coffy's death. Even if knowledge of an event of that magnitude could be imputed to the mayor and city council of Defendant City, an accidental industrial death would in no way put Defendant City on notice that the representative of Coffy's estate believed that Defendant City was at fault for producing or contributing to Coffy's death.  This omission is especially salient given the focus of the OSHA investigation on Bombardier's safety violations, not on the premises owner's liability.

Plaintiff failed to provide evidence of Defendant City's actual notice.  Because Plaintiff failed to provide the required notice, there is no possibility of recovery against the non-diverse Defendant City.  Defendants have carried their burden of demonstrating improper joinder.  The claims against Defendant City

---

[29]    See Doc. 24-2, Ex. 2 to Pl.'s Reply to Def. Bombardier's Resp. to Pl.'s Mot. for Leave to Am. Original Pet., Report After Receipt of Autopsy Report p. 1.

[30]    Id. p. 5.

are barred, and this court has subject matter jurisdiction over the remaining claims.  Plaintiff's motion to remand should be denied. The court's ruling on the motion to remand renders Defendant City's motion to dismiss moot.

### III.  Plaintiff's Motion for Leave to Amend

Rule 15 allows amendment of pleadings at the discretion of the district court and instructs that leave should be freely given when justice so requires.  <u>Flores v. Stephens</u>, 794 F.3d 494, 504 (5th Cir. 2015)(quoting Fed. R. Civ. P. 15(a)(2)).  In deciding whether to allow the amendment, the court may consider, among other things, whether the plaintiff's proposed amendment would be futile.  <u>See</u> <u>id.</u>

Plaintiff seeks to amend the original petition to clarify the claims against Defendant City, to join Defendant Bombardier in place of Bombardier Transportation System and Bombardier, Inc., and to add Abilities Unlimited, Inc., the temporary agency that employed Coffy.

The first two of these reasons for amendment are easily handled.  As discussed in the prior section, Plaintiff's suit against Defendant City is barred by the failure to provide the statutorily required written notice to the mayor and city council. The lack of notice cannot be remedied by amending the original petition.  Therefore, amendment to clarify claims against Defendant City would be futile and should not be allowed.  Amendment to

12

substitute Defendant Bombardier for the improperly named defendants should be allowed as it reflects the parties' prior agreement and the actual posture in which the case is being litigated.

Plaintiff's third reason for amendment, to add Abilities Unlimited, Inc., requires more discussion. The proposed amendment does not fall within the ambit of Rule 15 because Abilities Unlimited, Inc., is a non-diverse party whose joinder would destroy subject matter jurisdiction. <u>Cf</u>. <u>Villarreal v. Wells Fargo Bank, N.A.</u>, 2016 WL 767013, at *4 (5th Cir. Feb. 26, 2016)(quoting <u>Hensgens v. Deere & Co.</u>, 833 F.2d 1179, 1182 (5th Cir. 1987))(stating that the court should "scrutinize that amendment more closely than an ordinary amendment and consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits").

When a plaintiff seeks to add a non-diverse party after removal and the joinder will destroy jurisdiction, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). The court should make the decision based on the analysis of several factors, including: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction;" (2) whether the plaintiff "has been dilatory in asking for amendment;" and (3) whether the plaintiff "will be significantly injured if amendment is not allowed." <u>Moore v.</u>

<u>Manns</u>, 732 F.3d 454, 456 (5th Cir. 2013)(quoting <u>Hensgens</u>, 833 F.2d at 1182)(also acknowledging that this analysis is the correct legal standard for deciding whether joinder of a non-diverse party should be allowed after removal).

Plaintiff in this case sought to add Abilities Unlimited, Inc., as a necessary party, Plaintiff argued, because it would likely be named a responsible third party by one or more defendant. In Plaintiff's motion for leave to amend, Plaintiff states that amendment would join "another non-diverse entity, Abilities Unlimited, Inc. into the lawsuit thereby nullifying United's diversity allegations upon which it bases its removal."[31]   By Plaintiff's own admission, then, at least one of the purposes for adding Abilities Unlimited was to destroy diversity.

Plaintiff does not dispute that the Coffy's family knew, no later than a few weeks after Coffy's death, that Abilities Unlimited, Inc., was the temporary agency that employed Coffey. Evidence confirms that Coffy's family requested that Abilities Unlimited, Inc.'s insurance carrier pay for the funeral expenses and that Coffy's representatives initiated a workers' compensation claim against Abilities Unlimited, Inc., many months prior to filing suit.[32]   Plaintiff claims that the unknown information was

---

[31]   Doc. 14, Pl.'s Mot. for Leave to Am. Original Pet. p. 2.

[32]   <u>See, e.g.,</u> Doc. 21-2, Ex. B to Def. UA's Resp. to Pl.'s Mot. for Leave to Am. Pet., Ins. Claim Log; Doc. 21-2, Ex. B to Def. UA's Resp. to Pl.'s Mot. for Leave to Am. Pet., Letter from Tex. Mut. Ins. Co. to Coffy Dated Oct. 27, 2014.

that Abilities Unlimited, Inc., did not provide Coffy with any
training for the job at the airport.  Plaintiff claims that this
information did not become known until Plaintiff received copies of
the OSHA and HPD reports.

The proposed amended complaint adds one statement specifically
about Abilities Unlimited, Inc.'s actions, which asserts that the
employer failed to provide "a safe workplace, adequate training,
and adequate fall-protection equipment."[33]  Although negligence is
the basis for the claim against Abilities Unlimited, Inc., the
amended pleading does not allege facts that establish a duty owed
by Abilities Unlimited, Inc., the breach of that duty, or
causation.  Nor does Plaintiff allege facts that overcome the
workers' compensation bar to recovery.  The court finds the
overwhelming impression is that the only reason Plaintiff seeks to
add Abilities Unlimited, Inc., is to destroy diversity and require
remand.

The timing of the motion to amend only reinforces this
conclusion.  As mentioned above, Plaintiff was aware of Abilities
Unlimited, Inc.'s relationship with Coffey from very near the time
of the accident, which preceded the filing of the original petition
by eleven months.  But Plaintiff did not include Abilities
Unlimited in the original petition or seek to amend until four

_____

[33]    Doc. 14, Ex. A to Pl.'s Mot. for Leave to Am. Original Pet., Proposed
1st Am. Original Pet. ¶ 5.1.

months after filing the original petition and over two months after removal.  By that time, Plaintiff was faced with Defendant UA's allegation on removal of improper joinder and with Defendant City's motion to dismiss.  Plaintiff had failed to timely move for remand or to reply to the motion to dismiss.  Plaintiff was dilatory in attempting to add Abilities Unlimited, Inc.

Regarding the third factor, whether Plaintiff would be significantly injured by not being allowed to add Abilities Unlimited, Inc., the court finds the potential injury minimal. Plaintiff's argument in favor of adding Abilities Unlimited, Inc., rests on the assertion that another defendant may seek to add Abilities Unlimited, Inc., as a responsible third party.  Even if that were to occur, it hardly bears upon Plaintiff's potential recovery.  The named diverse defendants, UA and Bombardier, are large corporations that would be able to satisfy any judgment in this case.  To the extent that Plaintiff could assert a cause of action directly against Abilities Unlimited, Inc.,[34] she could do so in state court.  Parallel suits may be inconvenient, but they hardly give rise to significant injury.  Plaintiff will not be significantly injured by the denial of her motion for leave to amend to add Abilities Unlimited, Inc.

Plaintiff's motion is denied in all respects except with

---

[34]     As explained in a prior paragraph, a direct suit against Abilities Unlimitied, Inc., seems unlikely based on the facts alleged by Plaintiff.

16

regard to adding the proper defendant and dropping the improper defendants.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion to Remand be **DENIED**, Defendant City's Motion to Dismiss be **DENIED AS MOOT**, and Plaintiff's Motion for Leave to Amend be **GRANTED IN PART AND DENIED IN PART**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st  day of March, 2016.

U.S. MAGISTRATE JUDGE